## THE CITY OF LARNED V. ROBERT BOYD *et al.*

No. 14,973.    (90 Pac. 814.)

### SYLLABUS BY THE COURT.

1. ANSWER—*Several Defenses—Demurrer—Immaterial Error.*
Where a demurrer is filed to each of several defenses pleaded
to one cause of action set forth in the petition, and the de-
murrer is sustained as to certain of the defenses and over-
ruled as to the others, and upon the trial the court finds gen-
erally in favor of the defendant and renders judgment, *held,*
that the plaintiff cannot be prejudiced by the ruling on the
demurrer, if any one of the defenses upon which the action
is tried is sufficient as pleaded.

2. MUNICIPAL CORPORATIONS—*Vacation of Streets.*    Where the
right of way of a railroad crosses a street in a city diag-
onally, leaving, between the right of way and a cross thor-
oughfare, a section of the street, the length of the longer
side of which is about equal to the width of the street and
the other a mere point, an ordinance providing for the va-
cation of the street so far as the same intersects, crosses or
cuts or comes in contact with the right of way is effective
to vacate the triangular section of the street.

Error from Pawnee district court; CHARLES E. LOB-
DELL, judge.    Opinion filed June 8, 1907.    Affirmed.

### STATEMENT.

THIS suit was brought in the district court of Paw-
nee county to have a triangular tract of land between
the right of way of the Atchison, Topeka & Santa Fe
Railway Company and Broadway in the city of Larned
declared a public highway, and to have a certain ob-
struction therein, called the "hole-in-the-wall," declared
a nuisance and to abate and enjoin the defendants
from maintaining the same.    This triangular tract was
originally platted as a part of Fourth street, and lies
east of the square formed by the junction of that
street, which runs east and west, and Broadway, which
runs north and south; it is composed of that part of
Fourth street lying between this square and the right
of way of the railroad, which runs through the city

from the northeast to the southwest and the northern line of which passes the southeast corner of. Fourth street and Broadway at an angle of about forty-five degrees. The triangular tract is a cul-de-sac; its only opening is on the west.

It is conceded that Fourth street has been legally vacated where it 'is crossed by the railroad right of way. .

Judgment was rendered in favor of the defendants, and the city brings the case here.

*V. H. Grinstead,* for plaintiff in error.

*G. Polk Cline,* and *W. H. Vernon,* for defendants in error.      . .

The opinion of the court was delivered by

SMITH, J.: Several questions of practice are raised, growing out of a plea in abatement, motion for judgment, and demurrers, but we find nothing worthy of special notice except the demurrer to the answer. The answer purported to set up four defenses, and the plaintiff demurred generally to the entire answer and also to each separate defense, and finally to certain paragraphs of the third defense. A separate defense either does or does not state facts sufficient to constitute a complete or partial defense to the cause of action set forth in the petition, and each separate defense must be regarded as a whole, and subdivisions thereof cannot be attacked by demurrer. If redundant or irrelevant matter appears therein, it may be stricken out on motion.

Again, where a demurrer is filed to each of several separate defenses and is overruled as to some of them the plaintiff has his option to stand upon his demurrer and have the ruling reviewed or he can save his exceptions and proceed with his action, and, if defeated therein, thus preserve the questions for review. Where, however, as in this case, the court on the trial finds generally in favor of the defendants, without in-

dicating the grounds of its decision, it will be presumed the decision is based upon such defense or defenses as are sufficient and are sustained by the evidence. The burden of showing error is upon the plaintiff in error, and he can only demonstrate the particular grounds of a decision in such cases by requesting special findings of fact and conclusions of law.

The ordinance of 1882 was pleaded as a defense, which we find sufficient, and it therefore is to be presumed that the decision and judgment of the court was based thereon, and it becomes immaterial whether the court erred in overruling the demurrer to any other defense set forth in the answer.

Prior to July 7, 1882, the Atchison, Topeka & Santa Fe railroad was built and operated through the city of Larned, and the right of way thereof runs diagonally through the city from the northeast to the southwest. Fourth street runs east and west through the city, and Broadway runs north and south. The northern side of the right of way passes at the southeast corner of Broadway and Fourth street at an angle of about forty-five degrees, leaving a nearly equilateral triangular piece of Fourth street on the east side of Broadway, between it and the railroad right of way. On July 7, 1882, the mayor and council passed an ordinance the material portion of which reads as follows:

"Section 1. That Main, Broadway and Sixth streets in the said city be and the same are hereby declared public highways and ordered to be kept open and in proper condition for travel at the points where the same intersect and cut the right of way and depot grounds of the Atchison, Topeka & Santa Fe Railroad Company in city.

"Sec. 2. That all other streets and alleys or parts of streets or alleys in said city which intersect or cross or cut the right of way or depot grounds of said Atchison, Topeka & Santa Fe Railroad Company in said city be and the same are hereby vacated, so far as the same intersect, cross, cut or come in contact with the

right of way or depot grounds of the Atchison, Topeka & Santa Fe Railroad Company in said city."

The remainder of the ordinance purports to be a contract between the city and the railroad company for the maintaining of the crossings of the three streets named in section 1 by the railroad company on condition that the city should not in the future reopen any of the streets or alleys vacated by section 2 across the right of way or depot grounds.

This ordinance has ever since been in full force and effect, and if the provisions of section 2, fairly construed, vacated the triangular tract upon which the "hole-in-the-wall" is located, it determines this case without reference to the many other questions raised and discussed. We hold that the language of section 2, fairly construed, does include this cul-de-sac; indeed, without a specific description thereof, we do not see how language could have been adopted which would have been more applicable thereto. "All other streets . . . or parts of streets . . . which . . . come in contact with the right of way" includes this little part of a street, every foot of which, longitudinally of the street, comes in contact with the right of way. This language of the ordinance has no force or meaning whatever unless applied to such fractions of streets. And since this triangle is not and cannot in any sense of the word be a highway or thoroughfare, or any part thereof, since no possible points of travel can be reached by passing over it, it seems well to accredit the city officials with the wise intention of vacating it as a street and of allowing the same to revert to the abutting owners for some beneficent purpose.

Words and phrases in a statute (and an ordinance is a statute enacted by the legislative body of a city under a power delegated by the legislature) are to be construed according to the context and approved usage of the language. (Gen. Stat. 1901, § 7342.) Where the statute is plain and unambiguous there is no room

for construction so as to change the language employed therein. (*Ayers v. Comm'rs of Trego Co.,* 37 Kan. 240, 15 Pac. 229.)   It is also a canon of construction of all written instruments that, if consistent with the general purpose thereof and the context, meaning is to be given to every word, phrase and sentence thereof.

Now, there is no dispute or doubt as to the meaning of the words in section 2 of the ordinance which provides for the vacation of "parts of streets  .  .  . which intersect or cross" the right of way.   On the part of the city it is contended that this was the whole purpose and effect of this section.   On the other hand it is contended that something further was intended by the words "cut or come in contact with" the right of way.   It is not to be presumed, unless the purpose and  context of  a law require it, that a word or a phrase is used without any meaning whatever.   If, as may or may not be the case, the right of way was so located in the city that it overlaid, so to speak, one-third or one-half of a street running in the same general direction, would this clause be effective to vacate all that part of the street a portion of which was so overlaid?   We think so.   We also think that where, as in this case, the street crossed the right of way at a sharp angle, the latter clause was effective in vacating that part of the street which longitudinally came in contact with the right of way.

Objection is made to the introduction of certain evidence, but we find no error therein.

The judgment is affirmed.